(No. 12749.—Reversed and remanded.)

THE SPRING VALLEY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PETER SABATINI, Defendant in Error.)

*Opinion filed October 27, 1919.*

1. WORKMEN'S COMPENSATION—*an applicant must prove loss of sight was caused by injury complained of.* An applicant who seeks to recover an award for the subsequent loss of sight of an eye after having received an injury in the course of his employment must prove that the loss of sight was caused by the injury complained of.

2. SAME—*courts cannot determine the weight of evidence on controverted questions of fact.* The courts cannot determine the weight of the evidence on controverted questions of fact but can examine the record only to determine whether there is competent evidence to sustain the award.

3. SAME—*value of applicant's testimony as to previous condition of his eye.* In a proceeding to recover compensation for the total loss of sight of an eye, where the issue is whether the blindness was caused by disease or was caused entirely by the injury complained of, the testimony of the injured employee that he never had any trouble with the eye before the accident must be accepted as true, in the sense that he never knew that there was anything wrong with it.

4. SAME—*compensation cannot be awarded for total loss of eye if blindness is caused by pre-existing disease.* Although an employee's injured eye may not have been perfect, if he has always had normal use of it and the sight is lost as a result of the accident he is entitled to full compensation, but if he has a pre-existing progressive disease from which blindness ensues, and would have ensued regardless of the accident, compensation may be had only for the partial loss of vision caused by the injury.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

JOHN J. SHERLOCK, and MCDOUGALL, CHAPMAN & BAYNE, for plaintiff in error.

HENSON, GILBERT & HELMICK, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On Saturday, August 25, 1917, Peter Sabatini was employed by the plaintiff in error, the Spring Valley Coal Company, in its coal mine at Spring Valley, in Bureau county, and about eleven o'clock of that day a piece of rock or coal struck him in the right eye. He continued to work through the day but when he went home at night he washed his eye. On the following Monday morning he reported his injury to the pit-boss, who gave him an order to a doctor for treatment, and the doctor sent him to an eye specialist at LaSalle. The eye specialist treated the eye until September 8, when he told Sabatini to report to the doctor to whom the pit-boss sent him and that he thought he was able to go back to work. The sight of the eye did not improve and it was treated by an oculist at Ottawa, but the sight was entirely lost. On November 22, 1917, an application was made for compensation under the Workmen's Compensation act, and on a hearing an award was made by the arbitrator, which was confirmed by the Industrial Commission. The record was taken before the circuit court of Bureau county by writ of *certiorari,* and the writ was quashed and the order of the Industrial Commission confirmed. The court certified that the cause was one proper to be considered by this court, and a writ of error was sued out accordingly.

The only controversy is concerning the amount of the award, depending upon the question whether the total loss of sight was due to the accident.

By paragraph (*e*) of section 8 of the Workmen's Compensation act the compensation for loss of the sight of an eye is fifty per cent of the average weekly wage during 100 weeks, and for a permanent partial loss of an eye fifty per cent of the average weekly wage for that proportion of the number of weeks provided for the total loss which

the partial loss bears to a total loss. Paragraph (*j*) provides for an increase of five percentum for each child under sixteen years of age until the percentum shall reach a maximum of sixty-five percentum, and Sabatini was married and had three children under sixteen years of age. The award was for $11.46, which was sixty-five per cent of the average weekly wage of Sabatini, for 100 weeks, and if the total loss of sight of the eye was the result of the accident the award was right. If the total loss of sight was not caused by the accident but it caused a part of such loss, then Sabatini was entitled to $11.46 during a number of weeks in the proportion that the partial loss bore to the total loss.

It was incumbent on the applicant to prove that his loss of sight was caused by the accident. (*Chicago and Alton Railroad Co.* v. *Industrial Board,* 274 Ill. 336; *Albaugh-Dover Co.* v. *Industrial Board,* 278 id. 179; *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 id. 96; *Northern Illinois Traction Co.* v. *Industrial Board,* 279 id. 565; *Peterson & Co.* v. *Industrial Board,* 281 id. 326.) The courts cannot determine the weight of the evidence on controverted questions of fact but can examine the record only to determine whether there is competent evidence to sustain the award. (*Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31; *Sulzberger & Sons Co.* v. *Industrial Com.* id. 223; *Western Electric Co.* v. *Industrial Com.* id. 279; *Lefens* v. *Industrial Com.* 286 id. 32; *Heed* v. *Industrial Com.* 287 id. 505.) The question here, therefore, is whether there is any competent evidence in the record sustaining the conclusion of the Industrial Commission that the total loss of sight of the eye was due to the accident.

Sabatini testified that he never had any trouble with the eye before the accident; that after the accident it became inflamed, and when he went to the eye specialist he could not see because he could not keep the eye open; that while he was being treated it got better and he could see a little

bit and afterward could see nothing. The eye specialist testified that when Sabatini came to him he had an infected ulcer of the cornea, caused by the piece of rock or coal; that the eye was inflamed, with pus in the ulcer; that the foreign body caused an external infection but not in the internal section of the eye; that there was no perforation of the eye from the injury; that he treated the ulcer antiseptically and it healed up leaving a scar, which caused thirty-five per cent of loss of vision; that when he discharged Sabatini he made examinations of the eye to determine the loss of vision; that he found the scar covered about a fourth of the pupillary of the eye, causing a loss of about thirty-five per cent of vision; that in the interior of the eye he found choroiditis, which had nothing to do with the injury; that in the first stage of choroiditis there is acuteness and in the later stage it becomes atrophic, and he found atrophic patches in the choroid; that there was no connection between the blow on the eye and the loss of sight except as to thirty-five per cent due to the scar, and that Sabatini would have gone blind anyway in the same length of time. An oculist of thirty-two years' practice testified that he examined Sabatini about December 5, 1917, and found a superficial injury resulting in an ulcer and leaving a scar, and that the total loss of vision had no connection whatever with that injury except as to a percentage. The witness tested the eye at the hearing and found that there was no vision, but testified that choroiditis is an inflammation of the choroid, which is the middle layer of the wall of the eye-ball; that the ulcer, which did not perforate into the cornea, could not possibly make a man become blind in two weeks; that choroiditis is progressive and is acute and chronic and subacute, and loss of vision might become complete in two weeks.

Sabatini's testimony that he never had any trouble with the eye before the accident must be accepted as true in the sense that he never knew that there was anything wrong

with it. Although the eye may not have been perfect, if he always had normal use of it and the sight was lost as a result of the accident he would be entitled to full compensation. (*Mark Manf. Co. v. Industrial Com.* 286 Ill. 620.) If, on the other hand, he had a pre-existing disease known as choroiditis, which was progressive and from which blindness was certain to ensue, and the accident caused only a partial loss of vision, the statute provides a different measure of compensation. There was no contradiction of the testimony that he had choroiditis, which would cause blindness, and that the superficial scar resulting from the accident could not cause blindness but only a partial loss of vision due to the interference of the scar. In the present state of the record it must be held that the total loss of vision was not due to the accident. There is no evidence whether choroiditis is of such a nature that Sabatini would have been aware of its existence up to the time of the accident if he had it. For aught that appears he may have been afflicted by the disease, which would soon cause total blindness, and yet never have had any trouble with the eye. If a further hearing should be had the evidence may justify a different conclusion, but the evidence on the hearing which was had does not sustain the award for permanent total loss of the eye as a result of the accident.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to remand the application to the Industrial Commission for a correction of the award in harmony with the views herein expressed or for a further hearing as to the question considered in this opinion, if such further hearing should be desired.

*Reversed and remanded, with directions.*